UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**GEORGE MICHAEL THOMSON**     **CASE NO. 2:19-CV-00236**

**VERSUS**     **JUDGE JAMES D. CAIN, JR.**

**WESTLAKE CHEMICAL CORP.**     **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is a "Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) and Alternative Motion for Summary Judgment" (Doc. 10) wherein defendant, Westlake Chemical Corporation ("Westlake Chemical"), moves to dismiss the instant lawsuit for failure to state a claim upon which relief may be granted, or in the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue of material fact for trial. For the reasons that follow, the motion will be denied.

## FACTUAL STATEMENT

Plaintiff, George Michael Thomson, began working for Westlake Chemical in September 2017.[1] After one week, Thomson started a two (2) week training class for Basic Operator at the McNeese State University campus.[2] The class was taught by Associate Professor Richard Nyberg.[3] Thomson reported to Westlake Chemical on October 15 and 16, 2017 and on November 24, 2017, that he had been sexually harassed by Nyberg during the training.[4] Thomson reported Nyberg's conduct to the McNeese campus police on

---

[1] Doc. 1, para 6, Complaint and Jury Demand.
[2] *Id.*
[3] *Id.*
[4] Plaintiff's exhibit 2, Affidavit of George Michael Thomson, p. 3, Doc. 15-2.

October 17, 2019.[5] Westlake Chemical terminated Thomson's employment on November 28, 2017.[6]

Thomson filed an Administrative Charge with the Equal Employment Opportunity Commission alleging discrimination based on sex and retaliation;[7] it is disputed as to when the Administrative Charge was filed. The EEOC dismissed the Administrative Charge as untimely.[8] Thomson filed the instant suit on February 25, 2019, alleging that Westlake Chemical violated 42 U.S.C. § 2000e-5, *et seq*.

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to

---

[5] *Id.*
[6] *Id.* ¶¶ 7, 12.
[7] Defendant's exhibit A, p. 10.
[8] *Id.* p. 5.

2

plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations...." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)."[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557, 127 S.Ct. 1955.

3

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."*Id.,* at 570, 127 S.Ct. 1955.

*The instant suit is not time-barred*

Westlake Chemical argues that the Administrative Charge filed with the EEOC was filed too late, and therefore the instant suit must be dismissed for failure to state a claim. A precondition to filing a civil action in federal court requires a plaintiff to file an administrative charge of discrimination within the prescribed time period after the alleged discriminatory employment action occurred. 42 U.S.C. § 2000e-5€(1); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127 (1982). A Title VII plaintiff must file a charge of discrimination with the EEOC no more than 180 days after the alleged discriminatory employment action occurred. 42 U.S.C.§§ 2000e-5(e)(1). In "deferral states" the filing period is extended to 300 days if there is also a discrimination claim based on state law. Louisiana is a deferral state, and therefore the 300-day filing period applies. Louisiana Revised Statute 23:303.

The time begins to run "from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Mayes v. Office Depot, Inc.*, 292 F.Supp.2d 878, 888 (W.D. La. 2003). The employee is put on notice that a cause of action has accrued when a discrete and salient event such as termination of employment occurs. *Id.* Thomson was terminated on November 28, 2017. Westlake Chemical suggests that Thomson's Charge of Discrimination was filed on October 19, 2018. Westlake Chemical

submits "EEOC Form 5- Charge of Discrimination, #461-2018-02879" which is dated October 19, 2018.[9]

Thomson disputes this and argues that he initiated the Charge of Discrimination on September 4, 2018, by answering the online questionnaire. He was interviewed by an EEOC representative on September 10, 2018 and September 12, 2018, all within the 300-day time period. Thomson submits his affidavit to explain the time-line of events encompassing the filing of his Charge of Discrimination[10] which is truncated as follows:

> September 4, 2018 – Thomson inquires through the EEOC's website and contacts the EEOC to make an appointment to file a complaint.[11]
>
> September 10, 2018 – Thomson receives an email from Tania Reyes, an EEOC investigator. Thomson is interviewed by Reyes as to the allegations.[12]
>
> September 12, 2018 – (1) Thomson completes an online inquiry and receives a charge number, (2) Thomson sends an email to Reyes with an attached Word document listing changes to be made to Formal Charge document, (3) Ms. Reyes requests that Thomson make the changes to the formal charge and a required signature through the EEOC online portal; due to technical difficulties he is unable to do so.[13]
>
> September 17, 2018 – Reyes sends an email to Thomson requesting that he make the requested change to the Formal Charge through the EEOC portal noting that she could not edit the Formal Charge.
>
> September 24, 2018 – Thomson emails Reyes requesting that she make specific changes to the Formal Charge and informing her that he was unable to make the changes through the EEOC portal.[14]

---

[9] Defendant's exhibit A, pp. 10-11.
[10] Plaintiff's exhibit 1.
[11] Defendant's exhibit A, p. 55, Activity Log.
[12] *Id.*, p. 49, Charge Detail Inquiry.
[13] *Id.* p. 42.
[14] *Id.* p. 20.

5

September 25, 2018 – Reyes responds to Thomson's email that he "should be able to log into the portal now;" Thomson responds that he will log in and make the changes.[15]

September 27, 2018 – Reyes emails Thomson that changes have been made to the Formal Charge and resent.[16]

October 2, 2018 – Thomson works with his attorney through the EEOC's online portal to make changes to the Formal Charge. Reyes returned the Formal Charge. After a review, both Thomson and attorney notice changes that need to be made. Those changes were made and sent to Reyes who responds that Reyes has "corrected and sent back to you."[17] Reyes emails Thomson's attorney that her "clients charge has not been received yet. He is already passed his 300 days for his allegations."[18]

October 3, 2018 – Thomson's attorney emails Reyes and states that Thomson has "signed the charge of discrimination."[19] Reyes emails the Formal Charge with the corrections to Thomson and Thomson returns the Formal Charge with his signature. Reyes responds that she cannot see the signed charge yet. "He did not digitally sign it and send it back via the portal."[20]

October 4, 2018 – Thomson's attorney emails Reyes stating that she attempted to call Reyes and left a voice mail.[21]

October 16, 2018 – Thomson attempts to log on to the online portal to view the Formal Charge and sign, but again is unsuccessful. Thomson's attorney attempts to view the Formal Charge but is unable to do so receiving "Server Error in '/Portal' Application." Thomson's attorney also informs Reyes that there must be a problem with the EEOC website because she has also repeatedly received this message when dealing with the website.[22] Reyes responds and informs that she will contact Thomson's attorney the next day.

October 17, 2018 – In the evening, Reyes sends Thomson and his attorney two emails. The first email is a PDF of the Formal Charge for Thomson to sign with a pen. The second email provides the password to open the PDF in the first email.

---

[15] *Id.* p. 22 and 42.
[16] *Id.*
[17] *Id.* p. 33.
[18] *Id.* pp. 21 and 25.
[19] *Id.* p. 35.
[20] *Id.* p.31.
[21] *Id.*
[22] *Id.* p. 45.

October 19, 2018 – Thomson signs the Formal Charge with a pen and emails it to Reyes. The Formal Charge is signed and dated 10/19/19.[23]

November 27, 2018 – The EEOC issues a Dismissal and Notice of Rights noting that it is closing Thomson's file because "[y]our charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge"[24]

Westllake Chemical argues that the Formal Charge dated October 19, 2019, is untimely because it falls outside the 300-day time period. Thomson was terminated November 28, 2017. The October 19, 2018 date would be 326 days from Thomson's termination date. Thomson argues that the information provided to the EEOC on September 12, 2018, is sufficient to qualify as a filing and thus, within the 300-day time period.

Thomson relies on *Edelman v. Lynchburg College,* 535 U.S. 106, 122 S.Ct. 1145 (2002) wherein the Supreme Court held that the "EEOC's relation-back regulation is an unassailable interpretation of § 706," and further stated that an "EEOC regulation permits an otherwise timely filer to verify a charge after the time for filing has expired. *Id.* at 106.

In *Edelman,* Plaintiff Edelman faxed a letter to the EEOC in November 1997, claiming gender-based, national origin, and religious discrimination. Edelman made no oath or affirmation. The EEOC advised him to file a charge within the time limit and sent him a Form 5 Charge of Discrimination ("Charge"). Edelman returned the Charge 313 days from the date of the alleged discriminating act. In federal court, the defendant moved to

---

[23] *Id.* p. 10; p. 14.
[24] Defendant's exhibit A, p. 5. Doc. 10-3.

dismiss based on untimeliness. Edelman responded that his November 1997 letter was a timely filed charge and that under the EEOC regulations, the Form 5 verification related back to the date of the letter. Finding that the letter was not a "charge" the District Court dismissed the suit. The Fourth Circuit affirmed reasoning that because a charge required verification and must be filed within the limitations period, it follows that a charge must be verified within that period.

The Supreme Court reversed. The Supreme Court remarked that § 706(b) merely requires the verification of a charge, without saying when it must be verified, and § 706(e)(1) provides that a charge must be filed within a given period, without indicating whether the charge must be verified when filed. The Supreme Court then noted the two very different objectives of the two (2) provisions – timing and verification requirements and their intended purposes.[25]

In finding that the filing of the verified Form 5 related back to the letter submitted by Edelman, the Court reasoned that "[c]onstruing § 706 to permit the relation back of an oath omitted from an original filing ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently." *Edelman*, at 1146. At the same time, "the EEOC looks out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied." *Id.*

---

[25] The point of the time limitation is to encourage the charging party to file a discrimination claim before it gets stale and for the sake of a reliable result, to speedily end any illegal practice that proves out. The point of verification is to protect employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury.

8

In requiring the oath or affirmation, Congress did not mean to affect the nature of Title VII as "a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 124, 108 S.Ct. 1666 (1988); *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616 (1972). Courts have shown a high degree of consistency in accepting later verification as reaching back to an earlier, unverified filing. See *e.g., United States Currency in Amount of $103,387.27*, 863 F.2d 555, 561-563 (7th Cir. 1988); *Johnston Broadcasting Co. v. FCC*, 175 F.2d 351, 355-356 (D.C. 1949); see also 5A C. Wright & A. Miller, Federal Practice and Procedure § 1339, p. 150 (2d ed. 1990).

The Interview Notes created on September 10, 2018, by EEOC representative Reyes, describes conduct by an instructor/trainer (Nyberg) at McNeese when Mr. Thomson was participating in required training for his employer, Westlake Chemical. In addition to detailed factual allegations, Mr. Thomson alleges sexual harassment and retaliation in violation of Title VII.[26] The Court finds that Mr. Thomson provided the EEOC with enough information on or before September 12, 2019, to allege a charge of discrimination against Westlake Chemical. Accordingly, the motion to dismiss for failure to state a claim will be denied.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a

---

[26] Defendant's exhibit A, pp. 49-50. Doc. 10-3. See also Note created by Reyes dated 9/18/2019. *Id.* p. 51.

genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

*Thomson has met his burden of establishing a prima facie case of discrimination*

Thomson alleges that he was wrongfully terminated for reporting the alleged acts of discrimination to the EEOC and his employer in violation of Title VII. Westlake Chemical argues that Thomson cannot show a causal link between the protected activity and the

10

adverse employment action, and even if he could, there is no evidence that the legitimate, nondiscriminatory termination of Thomson's employment was mere pretext because he admitted that he failed the mandatory training. Thus, Westlake Chemical maintains that Thomson has failed to establish a *prima facie* case for discrimination.

Title VII prohibits discrimination in employment against a person on the basis of race, color, religion, sex, or national origin, and in retaliation for a protected activity. 42 U.S.C.A. §§ 2000e-1 *et seq.* The prohibition against retaliation, codified in 42 U.S.C.A § 2003-3(a), provides:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In order to present a *prima facie* case of retaliation, an employee must show that: (1) she engaged in an activity protected by the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. If a plaintiff succeeds in establishing a *prima facie* case, the *McDonnell Douglas* burden shifting framework then applies. *Haire v. Board of Supervisors of Louisiana State University*, 719 F.3d 356 (5th Cir. 2013); 42 U.S.C.A. § 2000e-3(a).

For purposes of this motion, Westlake Chemical challenges only the third element Thomson has to show – a causal link exists between the protected activity and the adverse employment action. The requirement of showing causation is not onerous at this stage; instead, the plaintiff need only show "that the protected activity and adverse employment action are not completely unrelated." *Garcia v. Penske Logistics, LLC,* 165 F.Supp.3d 542, 558-559 (S.D. Tex. 2014) (quoting *Mauder v. Metro. Trans. Auth. of Harris Cnty., Tex.,* 446 F.3d 574, 583 (5th Cir. 2006)).

Westlake Chemical acknowledges that Thomson was fired a month after initially reporting the sexual harassment to his employer and four (4) days after reporting the harassment to a third-party hotline.[27] However, Westlake Chemical argues that Thomson's subjective belief that he was fired because he reported a protected activity cannot be the basis of judicial relief. Citing *E.E.O.C. v. Louisiana Office of Community Services,* 47 F.3d 1438 (5th Cir. 1995).

Thomson informs the Court that he called the My Safe Workplace hotline on November 24, 2017 and four days later, Westlake Chemical fired him. Thomson relies on *Evans v. City of Houston,* 246 F.3d 344, (5th Cir. 2001), wherein the Fifth Circuit found that the plaintiff had demonstrated the existence of a causal connection when there was a difference of five (5) days between the protected activity and the adverse action. In *Evans,* the court found that the plaintiff had created jury issues regarding her retaliation claim by demonstrating factual disputes as to a *prima facie* case of retaliation and as to pretext.

---

[27] Doc. 1, ¶¶ 10-11; Defendant's exhibit A, p. 11.

Specifically, the plaintiff was subpoenaed to testify on behalf of a co-worker at a grievance hearing which was postponed to a later date in which the plaintiff did appear and testify.[28] The Fifth Circuit reversed the district court's finding that plaintiff's subsequent demotion was not an adverse action as well as its finding that there was no causal link between the protected activity and the adverse action.

The Fifth Circuit concluded that there was a factual dispute as to the actual date of plaintiff's demotion. It further held that "causal link" required in prong three of the *prima facie* case for retaliation is not as stringent as the "but for" standard.[29] Citing *Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996). The court concluded that the five (5) days between plaintiff engaging in a protected activity and the adverse employment action was sufficient to satisfy the causal connection for summary judgment purposes.[30]

In *Haire, supra*, the Fifth Circuit determined that a difference of approximately three months between the protected activity and the adverse action against the plaintiff was sufficient in proximity to find a causal connection. *Haire*, 719 F.3d at 368. Thomson reported Mr. Nydberg's conduct to Westlake Chemical's Human Resources Department on October 15 and 16, 2017, and to the McNeese Police Department on October 17, 2017. He reported the conduct to his employer's hotline on November 24, 2017, just four (4) days prior to being terminated. The Court finds that not only does the four (4) day time period satisfy the causal connection requirement, but also the approximately six-week time period

---

[28] The hearing concerned the co-worker's Title VII claims of racial discrimination.
[29] The district court based its finding on its belief that the plaintiff had failed to show that the adverse employment action would not have occurred "but for" her testimony at the co-worker's Title VII hearing.
[30] The Fifth Circuit cited *Weeks v. NationsBank, N.A.*, 2000 WL 341257, at *3 (N.D. Tex. 2000) (a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.)

13

between the protected activity and the adverse action is sufficient for purposes of the summary judgment motion to establish a causal connection.

*Thomson has met his burden of proof that the nondiscriminatory reason for his termination was mere pretext*

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803, 93 S.Ct. 1817, 1824-1825 (1973), the Supreme Court employs a three-part test designed to determine a defendant's motivation in taking the challenged action. First, the plaintiff must establish a *prima facie* case by proving the elements of the discrimination claims. If the plaintiff proves his *prima facie* case, a presumption of discrimination arises. See *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. See *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1478 n. 19 (5th Cir. 1992). A defendant meets this burden by proffering admissible evidence of an explanation that would legally be sufficient to justify a judgment for the defendant. See *Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir. 1991). This does not require that the defendant persuade the trier of fact that there was no intentional discrimination; the defendant need only produce evidence on that point. See *St. Mary's Honor Center, et al v. Melvin Hicks*, 509 U.S. 502, 507-08, 113 S.Ct. 2742, 2747-48 (1993). Although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981).

If a defendant satisfies this burden, the presumption of discrimination established by the plaintiff's *prima facie* case is rebutted. *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1094-1095. The plaintiff's burden of persuasion arises, and he must produce evidence that the defendant's proffered reasons were merely pretextual, the real reason for the action having been based on an impermissible animus. *Id.* at 256, 101 S.Ct. at 1095. The plaintiff may succeed at this juncture by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* In other words, Thomson must "offer sufficient evidence to create a genuine issue of fact" that Westlake Chemical's reason is a pretext for discrimination.

Westlake Chemical argues that even assuming that Thomson has presented a *prima facie* case, it has a legitimate, nondiscriminatory reason for the alleged discriminatory action. Westlake Chemical notes that Thomson admitted in his Charge and the Complaint that he failed the mandatory training.[31] Consequently, Westlake Chemical argues that it has met its burden to "proffer admissible evidence of an explanation that would be sufficient to justify a judgment for the defendant." *Simien v. Chemical Waster Management, Inc.*, 30 F.Supp.2d 939, 943 (W.D. La. 1998).

---

[31] Doc. !, ¶¶ 11-12; Defendant's exhibit A, p. 11.

Westlake Chemical then suggests that Thomson can present no evidence that the legitimate, nondiscriminatory termination of Mr. Thomson's employment was mere pretext because he admitted that he failed the mandatory training.

As stated above, Westlake Chemical relies on the fact that Thomson failed the Basic Operator Training. Thomson admits he failed two practical tests, one which occurred after a chemical substance was sprayed in his eyes. Thomson does not concede that he failed the overall training. Thomson argues that Westlake Chemical has not met its burden of showing a legitimate, non-discriminatory reason for his termination because it only argued the alleged legitimate, non-discriminatory reason, but failed to produce any evidence to support the allegation.

Thomson contends that even if Westlake Chemical has shown a legitimate non-discriminatory reason, he would not have been fired had it not been for him having reported Mr. Nyberg's sexual harassment to Human Resources, the McNeese Police Department and the My Safe Workplace hotline. Mr. Thomson submits his affidavit which declares that he was informed at the orientation session prior to beginning the Basic Operator Training that if an employee failed a test, the employee would receive additional training and be retested at the conclusion of the training.[32] Thomson further declared that he was informed after he failed the two tests, that he would be retrained and retested.[33]

---

[32] Plaintiff's exhibit 1, Thomson Affidavit.
[33] *Id.*

16

The Court finds that Thomson has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to the whether or not Westlake Chemical's decision to terminate Thomson was retaliatory discrimination.

*Thomson's sexual harassment claim*

Thomson submits that he is not claiming sexual harassment in this lawsuit, but instead has filed suit in state court as to his sex discrimination or sexual harassment under the Louisiana Employment Discrimination Law, Louisiana Revised Statute 23:301, *et seq.*[34] Hence, the Court will not address Westlake Chemical's argument that this claim should be dismissed.

## **CONCLUSION**

The Court finds that Thomson's EEOC Charge of Discrimination was timely. For that reason, the Court will deny Westlake Chemical's motion to dismiss for failure to state a claim. The Court further finds that Thomson has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to his Title VII claim for retaliation. Therefore, the motion for summary judgment will be denied.

**THUS DONE AND SIGNED** in Lake Charles, Louisiana on this 16 day of September, 2019.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE

---

[34] Opposition to motion for summary judgment, p. 2, Doc. 15.

17